**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ELWALDO R. JAMES,
　　　　　　*Petitioner-Appellant,*

v.

RICKIE HARRISON, Warden of
Kershaw Correctional Institution;
CHARLES M. CONDON, Attorney
General of the State of South
Carolina,

　　　　　　*Respondents-Appellees.*

No. 03-6586

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Terry L. Wooten, District Judge.
(CA-02-540-4-25BH)

Argued: October 1, 2004

Decided: November 17, 2004

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

---

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Niemeyer and Judge King joined.

---

## COUNSEL

**ARGUED:** Joel Morris Bondurant, Jr., HAYNSWORTH SINKLER
BOYD, P.A., Greenville, South Carolina, for Appellant. Samuel
Creighton Waters, Assistant Attorney General, OFFICE OF THE

ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees. **ON BRIEF:** Henry Dargan McMaster, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, South Carolina, for Appellees.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Elwaldo R. James appeals from the order of the district court denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (2000). We granted a certificate of appealability with respect to James' claim that he was denied effective assistance of counsel when his attorneys failed to appear during voir dire and jury selection, obtaining substitute counsel instead. Because we conclude that the state court's rejection of this claim was neither contrary to, nor an objectively unreasonable application of, clearly established Supreme Court precedent, we affirm.

I.

In September 1993, James was tried in South Carolina state court, along with eight co-defendants, for conspiring to traffic in crack cocaine. James retained Hemphill P. Pride and Richard B. Ness to represent him at trial. Six other attorneys represented the remaining defendants.

For reasons not entirely clear from the record, neither Pride nor Ness attended voir dire or jury selection in the case. Ness may have attended to another matter in federal court at the time; the record provides no explanation for Pride's absence other than the statement of Melvin Roberts, counsel for three of James' co-defendants and Pam Neeley, a witness for the prosecution, that "Mr. Pride had to leave."*

---

*The record reveals no definitive information as to when and on precisely what charges Roberts represented Neeley. At James' trial, Neeley testified that Roberts represented her on "pending" charges of burglary and grand larceny.

The following exchange occurred between the state trial judge and Roberts at the beginning of the trial proceedings:

> THE COURT: Mr. Elwaldo Ronaldo James, also known as Donald Mitchell, and also known as Kojak, would you stand, please? All right, he is represented by Mr. Hemphill Pride.

> ROBERTS: Mr. Pride had to leave, and Mr. Ness will be here after lunch. I believe he covered that with the court before; did he?

> THE COURT: We did. I thought he was going to be here through this process, but is someone acting on his behalf during this?

> ROBERTS: Yes, sir, he asked me to speak up if necessary and protect him during the time until Mr. Ness gets here. I told him I would.

> THE COURT: Very good.

Following voir dire, Roberts informed the judge that Alford Haseldin, counsel for another of James' co-defendants, "will speak for all defense counsel" in striking the jury, and Haseldin did so. Ness returned to the courtroom shortly after the jury had been selected. The record does not tell us exactly when Pride returned, but it is undisputed that he was absent during voir dire and jury selection. *See* Brief of Appellees at 12.

On September 17, 1993, following a week-long trial, the jury found James guilty of the charged conspiracy. The court sentenced him to 25 years imprisonment and fined him $50,000.

On October 21, 1997, after years of ultimately unsuccessful direct appeal proceedings, James filed an application for post-conviction relief (PCR) in South Carolina state court. The state PCR court held an evidentiary hearing at which Pride testified that he "was excused by the court" from appearing at voir dire and jury selection, and that

James "agreed to my absence." Pride further testified that he and Ness planned to have Melvin Roberts select the jury for them because Roberts "knew the lay of the land up here" and because using Roberts was a "plausible method of protecting our client and getting a good jury seated." "We discussed it with Elwaldo James," Pride said. "He was in complete concurrence. He raised no exceptions to my absence or Mr. Ness's absence or the plan that we had put in place in order to protect him, in terms of getting a good jury and seating a good jury."

Ness corroborated Pride's account at the hearing: "Mr. Pride and I had made arrangements that he was going to be here for a while that morning to view the jury and/or Mr. Melvin Roberts . . . was going to view it for us and relay that information because Mr. Roberts was a local attorney."

Relying on *Strickland v. Washington*, 466 U.S. 668 (1984), the PCR court rejected James' claim, finding that the absence of Pride and Ness during voir dire and jury selection did not amount to ineffective assistance of counsel. The court reasoned:

> At first glance, this Court notes that the attorneys' absence from the jury selection process would appear to be deficient representation. However, there were thirteen defendants and eight attorneys in this multi-defendant case. Neither the applicant nor his attorneys were from this region of the State. The attorneys for all defendants had to agree on the strikes which had to be shared. Mr. Pride decided to defer to Melvin R. Roberts and the other local attorneys to select the jury. He was adamant that he discussed this with the Applicant who was in agreement and expressed no objection to his attorneys' intent to be absent during the jury selection process.
>
>     . . . .
>
> The Applicant has the burden of proof that his retained attorneys were ineffective in their assistance and that he was prejudiced as a result. This Court finds that the Applicant's attorneys were not ineffective for failing to directly participate in jury voir dire and jury selection because they associ-

ated attorney Melvin Roberts to handle those aspects of the case on the Applicant's behalf. Furthermore, the Applicant has failed to carry his burden of proving he was prejudiced by the jury voir dire and jury selection processes.

After the South Carolina Supreme Court denied James' petition for a writ of certiorari, James filed a federal habeas petition in which he claimed, *inter alia*, that he had been deprived of effective assistance of counsel at a critical stage of the proceedings, i.e., during voir dire and jury selection. A United States magistrate judge recommended denying James' petition and granting the State summary judgment. The district court followed this recommendation.

Pursuant to the certificate of appealability issued by this court, *see* 28 U.S.C. § 2253(c), the instant appeal followed.

## II.

Before addressing the issue on which we granted a certificate of appealability, we note the limited nature of our review.

The Antiterrorism and Effective Death Penalty Act of 1996 provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has explained that under § 2254(d)(1) a state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state court decision involves an "unreasonable application" of Supreme Court precedent under § 2254(d)(1) if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. An application of Supreme Court precedent is unreasonable only if it is "objectively unreasonable." *Id.* at 409. Importantly, an incorrect or erroneous application of federal law does not render a state court decision objectively unreasonable. *Id.* at 410 ("For purposes of today's opinion, the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

With these principles in mind, we consider the case at hand.

### III.

James principally maintains that his retained counsel's absence during voir dire and jury selection constituted a *complete* denial of counsel during a critical stage of the proceedings. According to James, in failing to presume prejudice in these circumstances, the state PCR court acted contrary to, or unreasonably applied, *United States v. Cronic*, 466 U.S. 648 (1984).

### A.

Specifically, James asserts that the state PCR court improperly analyzed his claim under *Strickland* when the claim "should have been analyzed" under *Cronic*. *See* Brief of Appellant at 10.

*Strickland* and *Cronic* are companion cases, issued the same day, applying the same analysis, albeit with a different emphasis. Indeed, both *Strickland* and *Cronic* direct that in order to prevail on an inef-

fective assistance claim a defendant must ordinarily make two showings. "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687; *Cronic*, 466 U.S. at 666 (explaining that absent specific "circumstances mak[ing] it unlikely that the defendant could have received the effective assistance," he can make out an ineffective assistance claim "only by pointing to specific errors made by trial counsel"). This requires the defendant to demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Cronic*, 466 U.S. at 666 n.41 (noting that "claims based on specified errors . . . should be evaluated under the standards enunciated in *Strickland*"). "Second "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The Supreme Court also recognized in both *Strickland* and *Cronic* that in certain circumstances "prejudice is presumed" because prejudice "is so likely that case-by-case inquiry . . . is not worth the cost." *Strickland*, 466 U.S. at 692 (citing *Cronic*, 466 U.S. at 658). One such circumstance noted in *Strickland* is the very one that James contends applies here: "[a]ctual or constructive denial of the assistance of counsel altogether." *Id.* at 692. In *Cronic*, the Court identified several other circumstances that require a presumption of prejudice, noting that the "most obvious" of these circumstances involves the one asserted here — the "complete denial of counsel . . . . at a critical stage of [a defendant's] trial." *Cronic*, 466 U.S. at 659.

The central idea animating both cases is that counsel is constitutionally ineffective only when there results an "actual breakdown of the adversarial process" during the defendant's trial. *Id.* at 657-58; *see* *Strickland*, 466 U.S. at 687. Thus, the Court has explained, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic*, 466 U.S. at 658.

In sum, in *Strickland* the Court set forth the familiar two-step test that a defendant must ordinarily meet to prevail on an ineffective assistance claim; in *Cronic*, the Court reiterated the applicability of this test. Both cases, however, recognized a limited, but important,

exception to that test: A defendant need not establish prejudice — because a court will presume it — when there has been an "[a]ctual or constructive denial of the assistance of counsel altogether." *Strickland*, 466 U.S. at 692. Moreover, both cases emphasized that the focus of any ineffective assistance inquiry is on the "adversarial process" rather than the "accused's relationship with his lawyer as such." *Cronic*, 466 U.S. at 657 n.21.

Notwithstanding the similar analysis in the two cases, in the years since their issuance, courts and litigants have in shorthand manner distinguished a *Cronic* claim — in which because of some special circumstance, including complete denial of counsel, a defendant need not show prejudice — from a *Strickland* claim — in which a defendant must make that showing. *See*, *e.g.*, *Bell v. Cone*, 535 U.S. 685, 693, 695-697 (2002). With this understanding of James' contention that his is a *Cronic*, not a *Strickland*, claim, we turn to that contention.

B.

The State concedes, as it must, that voir dire and jury selection proceedings constitute a critical stage of the trial. *See*, *e.g.*, *Gomez v. United States*, 490 U.S. 858, 873 (1989). Thus, if James' lawyers, Pride and Ness, had abandoned him — if they had absented themselves from these proceedings and no other counsel had represented James — a reviewing court would have to presume prejudice because the abandonment would have constituted a "breakdown in the adversarial process." *Cronic*, 466 U.S. at 657-59, 662.

This is so, the Supreme Court has explained, because "the adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate." *Id.* at 656 (internal quotation marks and citation omitted). But the Court has also explained that when a proceeding is "tru[ly] adversarial . . . even if defense counsel may have made demonstrable errors," then "the kind of testing envisioned by the Sixth Amendment has occurred" and a reviewing court cannot presume prejudice. *Id.* To be sure, determining when a proceeding has been "tru[ly] adversarial" presents challenges. Given the facts of this case, however, we cannot hold that the state court ruled contrary to, or unreasonably applied, Supreme Court precedent in concluding that the jury selection proceedings, though

flawed, were nonetheless "tru[ly] adversarial" and so prejudice should not be presumed.

As ill-advised as their absence was, Pride and Ness did not abandon James. *See United States v. Jackson*, 207 F.3d 910, 918-19 (7th Cir. 2000), *vacated in part*, 531 U.S. 953 (2000) (holding defense counsel's absence did not constitute "abandonment by the lawyer of his client," which "would require reversal irrespective of prejudice," because counsel for co-defendants were present and generally protected the defendant's interests). Rather, they obtained Melvin Roberts, a co-defendant's lawyer, as substitute counsel for James during the voir dire and jury selection proceedings; and Roberts, along with the five other defense attorneys present, empowered another defendant's counsel, Alford Haseldin, to represent all nine defendants in the jury selection proceedings. James has not suggested any way in which Roberts or Haseldin failed to protect his interests during voir dire or jury selection. Indeed, he has not pointed to any issue related to jury selection that might have affected him differently than his co-defendants. *Cf. Jackson*, 207 F.3d at 919. Given these facts, we hold that the state court did not act contrary to, or unreasonably apply, Supreme Court precedent in refusing to presume prejudice.

In reaching this holding, we note that our sister circuits have held or suggested that facts similar to those at hand do trigger the presumption of prejudice. *See Olden v. United States*, 224 F.3d 561 (6th Cir. 2000); *United States v. Patterson*, 215 F.3d 776 (7th Cir. 2000); *United States v. Russell*, 205 F.3d 768 (5th Cir. 2000). Our holding presents no conflict with those cases, however, because they did not involve § 2254 claims, and thus were not subject to that statute's stringent standard of review. *See Olden*, 224 F.3d at 563 (§ 2255 petition); *Patterson*, 215 F.3d at 778 (direct appeal); *Russell*, 205 F.3d at 769 (§ 2255 petition). Our task fundamentally differs from that of the courts in those cases. They were called upon to determine if a federal court *incorrectly* applied established federal law; we have been called upon to determine if a state court *unreasonably* applied established federal law. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. We cannot conclude the state court acted unreasonably.

IV.

James alternatively contends that even if his is a *Strickland* claim — i.e., even if we cannot presume prejudice — the state PCR court unreasonably applied *Strickland* in denying him relief. We disagree.

*Strickland* directs that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Notwithstanding this deference, we can assume, for purposes of this case, that the state court applied the first prong of *Strickland* incorrectly. But in claims brought under § 2254, "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Cone*, 535 U.S. at 699 (interpreting 28 U.S.C. § 2254(d)(1)); *see also Williams*, 529 U.S. at 411. Rather, as noted above, § 2254(d)(1) requires a habeas petitioner to show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Cone*, 535 U.S. at 699. That seems unlikely.

But even if James could meet this difficult standard as to the first prong of *Strickland*, his claim fails. For as the PCR court held, James has failed to meet his burden on the second *Strickland* prong. He has offered no evidence of any prejudice resulting from the assertedly deficient performance of counsel. Even on appeal in this court, James points to no evidence of actual prejudice. Thus, the PCR court's determination — that James had "failed to carry his burden of proving he was prejudiced" — does not constitute an incorrect application of Supreme Court precedent, let alone an unreasonable one.

V.

For the reasons stated within, the judgment of the district court is

*AFFIRMED*.