**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JIMMIE WAYNE LAWRENCE,
        *Petitioner-Appellee,*

v.

GERALD J. BRANKER, Warden,
Central Prison, Raleigh, North
Carolina,
        *Respondent-Appellant.*

No. 07-2

JIMMIE WAYNE LAWRENCE,
        *Petitioner-Appellant,*

v.

GERALD J. BRANKER, Warden,
Central Prison, Raleigh, North
Carolina,
        *Respondent-Appellee.*

No. 07-4

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(5:03-hc-00327-BO)

Argued: December 7, 2007

Decided: February 22, 2008

Before WILLIAMS, Chief Judge, and MOTZ and
KING, Circuit Judges.

Affirmed in part; reversed in part by published opinion. Chief Judge Williams wrote the opinion, in which Judge Motz and Judge King joined.

---

**COUNSEL**

**ARGUED:** Sandra Wallace-Smith, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellant/Cross-Appellee. Bruce Tracy Cunningham, Jr., Southern Pines, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** Roy Cooper, Attorney General of North Carolina, Raleigh, North Carolina, for Appellant/Cross-Appellee. Amanda S. Zimmer, LAW OFFICE OF BRUCE T. CUNNINGHAM, JR., Southern Pines, North Carolina, for Appellee/Cross-Appellant.

---

**OPINION**

WILLIAMS, Chief Judge:

A North Carolina jury convicted Petitioner Jimmie Wayne Lawrence of first-degree murder, burglary, kidnapping, conspiracy to commit kidnapping, and conspiracy to commit murder. The jury sentenced Lawrence to death for the first-degree murder conviction. Thereafter, Lawrence unsuccessfully worked his way through the direct appeal and post-conviction review process in North Carolina. He then filed a petition under 28 U.S.C.A. § 2254 (West 2006) seeking habeas relief in federal court. The district court granted the petition in part, issued Lawrence a writ of habeas corpus, and vacated his death sentence, holding that the state post-conviction court unreasonably applied the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), in denying Lawrence post-conviction relief. The district court granted Lawrence habeas relief because it concluded that Lawrence's appellate counsel was ineffective for failing to appeal the submission of Lawrence's burglary conviction as an aggravating factor supporting a death sentence.

The State appeals the district court's issuance of the writ to Lawrence, and, for the reasons set forth below, we reverse. We conclude

that the state court reasonably applied *Strickland* in rejecting Lawrence's claim that his counsel was ineffective for not appealing the use of his burglary conviction as an aggravator. We also reject Lawrence's cross-appeal of the district court's partial denial of his habeas petition, concluding that another of his ineffective-assistance claims is procedurally defaulted and that his due-process claims relating to the adjudication of his state post-conviction motion are not cognizable on federal habeas review.

I.

A.

The facts, as recounted by the Supreme Court of North Carolina in its opinion in Lawrence's direct appeal, are as follows:

> The State's evidence tended to show that [Lawrence] and Gwen Morrison dated for almost two years and that their relationship ended in early December 1996. Morrison began living with Dale McLean in late December 1996. On 18 January 1997, Morrison and McLean were at home with McLean's two children, ten-year-old Chastity McLean and five-year-old Dale "Junior" McLean, when someone knocked on the back door. McLean looked out the window and said, "It's Jimmie." Morrison opened the door and stood on the top step in her nightgown and slippers.

> [Lawrence] was standing on the ground in front of the mobile home; and a man that Morrison had never seen before, William Rashad Lucas, was standing behind [Lawrence] holding a sawed-off shotgun. [Lawrence] asked Morrison to leave with him. When Morrison refused, [Lawrence] pulled a nine millimeter handgun from the front of his pants. Morrison then told [Lawrence] that she did not want any trouble and that she would leave with him, but that she needed to get her shoes and coat first. Morrison turned toward the door and [Lawrence] ran up the steps, pushing Morrison through the door into the mobile home. As [Lawrence] and Morrison came through the door, Chastity and Junior were sitting in the living room and McLean was

walking empty-handed down the hallway toward the door. [Lawrence] pushed Morrison away and shot McLean, who grabbed his head and fell to the floor. [Lawrence] stood over McLean and fired several more rounds. [Lawrence] then grabbed Morrison by the arm and said that he would also kill her if she did not leave with him. [Lawrence] led Morrison outside and put her into the backseat of his vehicle.

Lucas drove to [Lawrence]'s house. Lucas told [Lawrence] that he should have shot Morrison, too, because she "was going to tell everything." Morrison, [Lawrence], and Lucas then got into Lucas' car; and Lucas drove to the Comfort Inn in Sanford, North Carolina, where Lucas stayed in the car with Morrison while [Lawrence] rented a room. Once inside the room, Lucas put his shotgun on a bed and left; he returned thirty minutes later with a pair of jeans that belonged to his girlfriend. Lucas left again, and [Lawrence] took a shower after telling Morrison that he would kill her if she tried to leave.

Morrison sat on the bed while [Lawrence] showered. When [Lawrence] came out of the bathroom, he lay on the bed next to Morrison and fell asleep with his arm or leg over her body so that she could not leave the room. [Lawrence] awoke later and asked Morrison to have sex with him. Morrison agreed out of fear that [Lawrence] would kill her if she refused him.

Sometime thereafter, [Lawrence] returned a call to his mother and told her to have his father pick him up. He then told Morrison to put on the jeans that Lucas had brought earlier. Someone arrived at the Comfort Inn driving [Lawrence]'s vehicle; [Lawrence] put the shotgun under the mattress and left. Morrison then called her cousin to come get her.

Meanwhile, after [Lawrence] and Lucas had driven away with Morrison, Chastity called her grandmother, who instructed Chastity to call the police. Shortly thereafter, members of the Harnett County Sheriff's Department

arrived. The officers found no signs of life in McLean. A detective carried the children away from the crime scene, and Chastity calmed down enough to give a statement that [Lawrence] had shot her father. The Lee County Sheriff's Department subsequently took [Lawrence] into custody; and with [his] consent, several agents from the State Bureau of Investigation ("SBI") searched [Lawrence]'s room at the Comfort Inn. The agents found the shotgun in the hotel room, and Lucas' girlfriend later turned over the nine-millimeter handgun to the Harnett County Sheriff's Department.

The pathologist who performed the autopsy on McLean found a total of nine gunshot wounds on McLean's body, all fired at a close range of no more than three feet. The gunshot wounds on McLean's right arm, nose, and forehead were not the fatal injuries. The cause of death was any one of the four bullets that entered McLean's brain through the right side of his skull. A forensic firearms examiner from the SBI determined that the shell casings collected at the scene from around McLean's body had been fired from [Lawrence]'s nine-millimeter pistol.

*State v. Lawrence*, 530 S.E.2d 807, 812-13 (N.C. 2000).

### B.

On February 10, 1997, a state grand jury in Harnett County, North Carolina, indicted Lawrence, charging him with the first-degree murder of Dale McLean. Later, the grand jury added charges of first-degree burglary, first-degree kidnapping, conspiracy to commit kidnapping, and conspiracy to commit murder.

On December 1, 1997, Lawrence proceeded to trial in Harnett County Superior Court. After a week-long trial, a jury convicted him on all counts. The jury convicted Lawrence of first-degree murder under alternate theories of premeditation and deliberation and felony murder, relying on Lawrence's convictions for burglary and kidnap-

ping for the felony-murder theory. The predicate felony underlying Lawrence's burglary conviction was the murder itself.[1]

Pursuant to North Carolina law, a capital sentencing hearing was held. Two statutory aggravating factors were submitted to the jury, which found both to exist: (1) that "[t]he capital felony was committed while the defendant was engaged . . . in the commission of . . . burglary," N.C. Gen. Stat. § 15A-2000(e)(5) (2007), and (2) that "[t]he murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons," *id.* § 15A-2000(e)(11).[2] On December 11, 1997, the jury sentenced Lawrence to death for the first-degree murder conviction.

After Lawrence's death sentence was imposed, the court appointed Lawrence new counsel to represent him on direct appeal, and Lawrence appealed his convictions and death sentence. On June 16, 2000, the Supreme Court of North Carolina affirmed Lawrence's convictions and capital sentence, *Lawrence*, 530 S.E.2d at 807, and on January 8, 2001, the U.S. Supreme Court denied him a writ of certiorari, *Lawrence v. North Carolina*, 531 U.S. 1083 (2001).

Once Lawrence had exhausted his direct appeals, he was again appointed new counsel to represent him in state post-conviction proceedings. On August 1, 2001, Lawrence began his state post-conviction appeals, which in North Carolina are brought via a Motion for Appropriate Relief ("MAR") in the Superior Court ("MAR

---

[1] North Carolina's definition of first-degree burglary tracks the common-law understanding of the crime: it requires the breaking and entering at night of an occupied dwelling house or sleeping apartment of another with the intent to commit a felony therein. N.C. Gen. Stat. § 14-51 (2007). It is undisputed that the felony underlying Lawrence's burglary conviction is his murder of Dale McLean; the trial court instructed the jury that Lawrence would be guilty of burglary only if he broke into and entered the home with the intent to commit murder.

[2] The "(e)(11)" aggravating circumstance was based on Lawrence's kidnapping of Morrison, which he accomplished by brandishing a handgun and demanding that she leave with him.

court"). N.C. Gen. Stat. § 15A-1411 (2007). The MAR court denied Lawrence relief on all his claims, finding that many of Lawrence's claims were procedurally defaulted and, alternatively, that all of his claims failed on the merits. Lawrence appealed the MAR court's ruling, and the Supreme Court of North Carolina denied discretionary review of the MAR court's judgment on November 21, 2002, *State v. Lawrence*, 573 S.E.2d 159 (2002), as did the U.S. Supreme Court, *Lawrence v. North Carolina*, 538 U.S. 987 (2003).

Lawrence then turned to the federal courts for habeas relief. On May 2, 2003, Lawrence timely filed a § 2254 petition in the Eastern District of North Carolina alleging, *inter alia*, (1) that the MAR court violated his due-process rights by permitting the judge who presided over his trial to also adjudicate his MAR; (2) that the MAR court violated his due-process rights by instructing counsel for the State to "draft [an] order summarily denying all of Lawrence's claims," (J.A. at 645), without specifying any grounds for denial; (3) that Lawrence's trial counsel was ineffective for conceding his guilt to rape and kidnapping without his consent; and (4) that both Lawrence's trial and appellate counsel were ineffective because they failed to argue that submission of Lawrence's burglary conviction as an aggravating circumstance supporting a death sentence violated the Due Process, Double Jeopardy, and Cruel and Unusual Punishment Clauses of the U.S. Constitution. Through this last claim, Lawrence contended that his burglary conviction could not be used as an aggravating circumstance because "the underlying felony to the burglary was the murder itself." (J.A. at 462.)

The State moved for summary judgment, and the district court held a hearing on the State's motion on August 30, 2006. On March 19, 2007, the district court granted summary judgment in favor of the State on all of Lawrence's claims except one: his claim that his counsel was ineffective for failing to challenge on appeal the submission of his burglary conviction as an aggravating circumstance supporting a death sentence. With respect to this claim, the district court issued Lawrence a writ of habeas corpus and vacated his death sentence, concluding that, under *Strickland*, Lawrence's appellate counsel was ineffective for failing to argue on direct appeal that the burglary aggravator was constitutionally defective. The district court reasoned that Lawrence's burglary conviction "failed to perform its constitu-

tionally required function of narrowing the class of death-eligible defendants," (J.A. at 833), because the predicate felony underlying the burglary was the murder itself. In the district court's view, "use of the burglary aggravator was tantamount to aggravating the murder based upon Lawrence's intent to commit the murder." (J.A. at 832.) Thus, the court concluded that Lawrence's appellate counsel was ineffective for failing to raise the issue on appeal.

On April 9, 2007, the State appealed the district court's issuance of the habeas writ to Lawrence and vacatur of his death sentence. On April 23, 2007, Lawrence filed a cross-motion for appeal and requested a certificate of appealability pursuant to 28 U.S.C.A. § 2253(c)(1) (West 2006), which the district court granted on the following issues: (1) whether the MAR court unreasonably applied *Strickland* in rejecting Lawrence's claim that his trial counsel was ineffective for conceding his guilt to kidnapping and rape without his consent, and (2) whether Lawrence's due-process claims relating to the adjudication of his MAR in state court are cognizable on federal habeas review.

## II.

### A.

We review *de novo* the district court's decision on Lawrence's § 2254 petition based on the record before the MAR court, applying the same standards as did the district court. *Robinson v. Polk*, 438 F.3d 350, 354 (4th Cir. 2006). Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the scope of federal review is highly constrained. We may grant a petition with respect to any claim adjudicated on the merits in state court only if the state-court decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C.A. § 2254(d)(1).

A decision of a state court is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court adjudication is an unreasonable application of federal law when the state court "correctly identifies the governing legal rule [from the Supreme Court's cases] but applies it unreasonably to the facts of a particular . . . case," *id.* at 407-08, or "applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply the principle of a precedent in a context where such failure is unreasonable," *Robinson*, 438 F.3d at 355 (internal quotation marks omitted). The state court's application of clearly established federal law must be "objectively unreasonable," for a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. at 409, 411. The phrase "clearly established federal law" refers "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.

In deciding whether a petitioner has demonstrated the deficiency of the state-court adjudication under § 2254(d), we must presume state court findings of fact to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1).

## B.

The State appeals the district court's issuance of a habeas writ to Lawrence and vacatur of his death sentence. The district court issued the writ based on its conclusion that, under *Strickland*, Lawrence's appellate counsel was ineffective for failing to argue on direct appeal that submission of Lawrence's burglary conviction as an aggravating circumstance violated the U.S. Constitution. Specifically, the district court reasoned that, because the predicate felony underlying the burglary conviction was the first-degree murder, submission of the burglary conviction as an aggravating circumstance amounted to aggravation of the first-degree murder based on the murder itself. For this reason, the district court concluded that the burglary aggravator did not sufficiently narrow the class of death-eligible defendants, which is required under the Supreme Court's decision in *Lowenfield*

*v. Phelps*, 484 U.S. 231 (1988), for a death sentence to pass muster under the Eighth and Fourteenth Amendments. The court concluded that Lawrence's appellate counsel was ineffective for failing to raise the issue on direct appeal.

The State argues that the district court erred in issuing the habeas writ to Lawrence because the MAR court's denial of Lawrence's claim was not an objectively unreasonable application of *Strickland*.

1.

The law pertaining to claims of ineffective assistance of counsel is well-established. To show that counsel rendered ineffective assistance, a defendant must satisfy the two-pronged standard set forth in *Strickland*. First, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness" in light of the prevailing professional norms. *Strickland*, 466 U.S. at 688. Second, the defendant must show that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also id.* (directing that "[j]udicial scrutiny of counsel's performance must be highly deferential"). Given this strong presumption of reasonable performance, it is no wonder that we have stated that the showing required under *Strickland*'s first prong is a "difficult" one to make. *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004). Moreover, even if a petitioner is able to show that his counsel's performance fell below an objectively reasonable standard, he has won only half the battle, for he must also show that, absent his counsel's errors, the outcome of the proceeding would have been different. *Id.*

Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit, *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc), and we "must accord [ ] counsel the presumption that he decided which issues were most likely to afford relief on appeal," *id.* (internal quotation marks omit-

ted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), *cited with approval* in *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Thus, under *Strickland*, Lawrence's appellate counsel was only ineffective if his failure to challenge the submission of the burglary conviction as an aggravating circumstance fell below an objective standard of reasonableness and, but for that failure, Lawrence would have prevailed in his appeal.

2.

To pass constitutional muster under the Eighth and Fourteenth Amendments, "a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield*, 484 U.S. at 244 (quoting *Zant v. Stephens*, 462 U.S. 862, 877 (1983)). Narrowing of the class of death-eligible persons may happen at either the guilt phase of the trial or the sentencing phase: Either a state may "itself narrow the definition of capital offenses" and permit the jury to make the death-eligibility determination at the guilt phase, or "the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." *Lowenfield*, 484 U.S. at 246; *see also Tuilaepa v. California*, 512 U.S. 967, 972 (1994) ("[A]ggravating circumstance[s] may be contained in the definition of the crime or in a separate sentencing factor (or in both)."). If the constitutional narrowing function is performed at the guilt phase, "[t]he fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process." *Id.*

North Carolina criminalizes six grades of homicide: first- and second-degree murder, voluntary and involuntary manslaughter, and felony and misdemeanor death-by-vehicle. N.C. Gen. Stat. §§ 14-17, 14-18, 20-141.4 (2007). First-degree murder is separated into five distinct classes: (1) murder perpetrated by means of a nuclear, biological, or chemical weapon of mass destruction; (2) murder perpetrated by means of poison, lying in wait, imprisonment, starving, or torture; (3)

murder perpetrated by any other kind of willful, deliberate, and premeditated killing; (4) murder committed in the perpetration or attempted perpetration of certain enumerated felonies (felony-murder); and (5) murder committed in the perpetration or attempted perpetration of any other felony committed or attempted with the use of a deadly weapon. *Id.* § 14-17. North Carolina has made all forms of first-degree murder death-eligible. *Id.*

Pursuant to N.C. Gen. Stat. § 15A-2000, once a defendant is adjudged guilty of first-degree murder, a separate sentencing proceeding is held to determine whether the defendant should be sentenced to death or life imprisonment. N.C. Gen. Stat. § 15A-2000. After hearing the evidence, the arguments of counsel, and the instructions of the court, the jury determines if an aggravating circumstance or circumstances supporting a death sentence exist. *Id.* § 15A-2000(b)(1). At least one aggravating circumstance must be found before the jury may impose the death penalty. *Id.* § 15A-2000(c)(1). The jury then determines whether any mitigating circumstances exist. *Id.* § 15A-2000(b)(2). Once the jury determines the existence of any mitigating circumstances, it then weighs the aggravating circumstances against the mitigating circumstances. *Id.* § 15A-2000(c)(3). Based on this consideration, the jury recommends that the defendant either be sentenced to death or life imprisonment. *Id.* § 15A-2000(b)(3). The jury's sentencing verdict must be unanimous for either recommendation. *Id.*

The jury found Lawrence guilty of first-degree murder under alternate theories of premeditation and deliberation and felony-murder and recommended a death sentence based on its finding of both statutory aggravating circumstances submitted to it: (1) that the first-degree murder was committed while Lawrence was engaged in the commission of a burglary, *id.* § 15A-2000(e)(5), and (2) that the murder for which Lawrence was convicted was part of a course of conduct in which Lawrence engaged and which included his commission of other crimes of violence against another person or persons, *id.* § 15A-2000(e)(11). As noted above, the predicate felony underlying Lawrence's burglary conviction was his murder of Dale McClean.

The district court granted Lawrence habeas relief on the ground that his appellate counsel was ineffective for failing to argue on direct appeal that submission of Lawrence's burglary conviction as an

aggravating circumstance was constitutionally infirm because it did not perform the narrowing function required under *Lowenfield*. In the district court's view, because "intent to commit murder was an essential element of the burglary offense," "the burglary aggravator failed to provide a meaningful basis for distinguishing the murder from those where death is not appropriate." (J.A. at 833.) Turning to *Strickland*, the court concluded that Lawrence's appellate counsel's failure to raise the issue on direct appeal "fell below an objective standard of reasonableness," (J.A. at 833), and that "there exists more than a reasonable probability that Lawrence would have prevailed on appeal" had appellate counsel raised the claim, (J.A. at 835.)

Of course, the ultimate question that we must answer in this appeal — the same question the district court faced below — is whether the *MAR court's* denial of Lawrence's claim on the merits was an unreasonable application of, or contrary to, *Strickland*. In its order issuing the writ, the district court never mentioned the MAR court's decision, moving directly from a finding of ineffective assistance to issuance of the writ. We need not dwell on this procedural peculiarity, however, for we conclude that the MAR court's denial of Lawrence's claim on the merits was not unreasonable or contrary to *Strickland*.

3.

The district court concluded that Lawrence's appellate counsel was ineffective because "the problem with the burglary aggravator was apparent from the record." (J.A. at 834.) In our view, however, the "problem" with the burglary aggravator is far from "apparent," and may be nonexistent.

As an initial matter, we note that Lawrence concedes, and the district court acknowledged, that *generally* a burglary conviction can be submitted as an aggravating circumstance in North Carolina without violating the U.S. Constitution. Indeed, as the parties note in their briefs, numerous death sentences have been handed down in North Carolina based on the jury's finding that the murder occurred during the commission of a burglary. *See, e.g.*, *State v. Gibbs*, 436 S.E.2d 321, 354 (N.C. 1993). Instead, the district court granted Lawrence habeas relief based on its conclusion that Lawrence's *particular* bur-

glary conviction was constitutionally unsuitable as an aggravating circumstance.

We are not as convinced as the district court that submission of the burglary aggravator was error. North Carolina defines first-degree burglary to require the breaking and entering at night of an occupied dwelling house or sleeping apartment of another with the intent to commit a felony therein. N.C. Gen. Stat. § 14-51. The defendant's intent to commit a felony must exist at the time of entry, but the defendant need not commit the felony once inside for criminal liability to lie. Once the defendant breaks into and enters a house with the requisite intent to commit a felony in the house, the burglary is complete. *State v. Chandler*, 467 S.E.2d 636, 641 (N.C. 1996).

In concluding that the burglary aggravator served no narrowing function at the sentencing phase of Lawrence's trial, the district court focused exclusively on the "intent to commit a felony therein" component of the crime of burglary, reasoning that, because the felony underlying the burglary conviction was the murder itself, aggravation of the murder based on the burglary was "tantamount to aggravating the murder based upon Lawrence's intent to commit the murder." (J.A. at 832.) But burglary requires more than just the intent to commit a felony in a house; it also requires a *breaking and entering of the house*. Whatever the felony that underlies a burglary conviction in North Carolina, it is *always* true that the convicted burglar broke into and entered a house. It is therefore at least arguable that submission of a burglary conviction as an aggravating circumstance, irrespective of the felony underlying the burglary conviction, "genuinely narrow[s] the class of persons eligible for the death penalty," *Lowenfield*, 484 U.S. at 244 (internal quotation marks omitted), because it differentiates the murderer who breaks into and enters a house to kill someone from the murderer on the street. In any event, there is nothing in *Lowenfield* that clearly instructs that this distinction between burglar-murderers and on-the-street murderers is not enough to constitutionally narrow the class of defendants eligible for the death penalty, irrespective of the felony underlying the burglary. However one dissects the definition of burglary, burglar-murderers are a subclass of all murderers. *See Tuilaepa*, 512 U.S. at 972 (stating that an aggravating circumstance must not be unconstitutionally vague and must "not apply

to every defendant convicted of a murder," but must instead apply "only to a subclass of defendants convicted of murder").

We also find the district court's reliance on the Supreme Court of North Carolina's decision in *State v. Cherry*, 257 S.E.2d 551 (N.C. 1979), to be misplaced. In *Cherry*, the court held that in cases where the defendant is convicted *only* of felony-murder, the felony supporting the felony-murder conviction cannot be submitted as an aggravating circumstance to the capital sentencing jury. *Id.* at 568. Lawrence, however, was convicted of both felony-murder *and* premeditated murder, and the *Cherry* court stressed that "[n]othing we have said herein should be construed to foreclose consideration of the aggravating circumstances found in . . . 15A-2000(e)(5) when a murder occurred during the commission of one of the enumerated felonies but where the defendant was convicted of *first degree murder on the basis of his premeditation and deliberation*." *Id.* (emphasis added). Thus, *Cherry* actually undermines Lawrence's ineffective-assistance claim.

Indeed, since *Cherry* was decided, the Supreme Court of North Carolina has consistently held that when a defendant's first-degree murder conviction was based both on the felony-murder rule and premeditation and deliberation, submission of the underlying felony as an aggravating circumstance is not prohibited. *See, e.g.*, *State v. Conaway*, 453 S.E.2d 824, 852 (N.C. 1995) ("*State v. Cherry* prohibits the submission of the underlying felony as an aggravating circumstance only when a defendant is convicted solely of felony murder.") More to the point, the court has, on at least one occasion, refused to find any state or federal constitutional errors (of the *Lowenfield* type or otherwise) in the submission of a burglary conviction as an aggravating circumstance *when the felony underlying the burglary conviction was the murder itself. See State v. Gay*, 434 S.E.2d 840, 851, 855-56 (N.C. 1993) (finding no error in the submission of burglary aggravator when felony underlying the burglary conviction was murder itself).[3]

---

[3]Lawrence notes that, under North Carolina law, "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation." N.C. Gen. Stat. § 15A-1340.16(d) (2007). Our inquiry, however, is limited to determining whether the state-court decision was either contrary to, or an unreasonable application of, clearly established *federal* law as determined by the Supreme Court. 28 U.S.C.A. § 2254(d)(1) (West 2006).

Taken together, *Lowenfield* and *Gay* would have led a reasonable appellate attorney in North Carolina to believe that Lawrence's ineffective-assistance claim bore little — perhaps no — chance of success on appeal. The district court acknowledged that Lawrence's appellate counsel "submitted a well written brief addressing twenty-four . . . issues." (J.A. at 834.) This well-written brief did not raise the ineffective-assistance claim Lawrence now presses on collateral review, but, again, a reasonable attorney would likely have thought that the claim had little chance of success. And even if there was some error in the submission of the burglary aggravator at the sentencing phase of Lawrence's trial, it was not an obvious error (at least it is not obvious to us), and we do not think that Lawrence's counsel performed deficiently in failing to appeal this hypothetical error. We thus conclude that, under *Strickland*, Lawrence's appellate counsel was not ineffective for failing to raise the burglary-aggravator issue on appeal.

4.

We are persuaded that Lawrence's appellate counsel rendered him effective assistance, but even if we indulge the contrary thought, we nevertheless are convinced that the MAR court's denial of Lawrence's *Strickland* claim on the merits was neither unreasonable nor contrary to established federal law. The MAR court rejected Lawrence's claim at *Strickland*'s first prong, concluding that "submission of the underlying felony of burglary as an aggravating circumstance was proper" and that "[a]ppellate counsel cannot be ineffective for failing to assign error to an issue that is without merit." (J.A. at 708.)

In light of our discussion above, the district court's conclusion that submission of the burglary aggravator was clearly unconstitutional is incorrect. Indeed, it is not clear to us that any constitutional error occurred in the submission of the burglary aggravator, much less an error so glaring as to warrant relief under *Strickland*. At the time the MAR court denied Lawrence's claim, the U.S. Supreme Court's decision in *Lowenfield* and the Supreme Court of North Carolina's decision in *Gay* strongly suggested, if not confirmed, that Lawrence's ineffective-assistance claim would have failed if raised on appeal. Given the tremendous leeway afforded to appellate counsel by *Strickland* and to the MAR court by § 2254(d), we cannot conclude that the

MAR court's application of *Strickland* was objectively unreasonable or contrary to clearly established federal law. Lawrence's ineffective-assistance claim is simply not of the stock that underlies successful *Strickland* challenges in the AEDPA context.

Accordingly, we reverse the district court's grant of a writ of habeas corpus to Lawrence on his ineffective-assistance claim.

## III.

Having concluded that the district court erred in issuing Lawrence a habeas writ on his claim of ineffective assistance of appellate counsel, we turn to Lawrence's cross-appeal. In his cross-appeal, Lawrence claims (1) that his trial counsel was ineffective for conceding his guilt to kidnapping and rape without his consent, and (2) that his due-process rights were violated by the MAR court in denying his motion for post-conviction relief. We address each argument in turn.

## A.

Lawrence first contends that, under *Strickland*, his trial counsel was ineffective for conceding his guilt to kidnapping and rape without his consent. By conceding guilt for these offenses, Lawrence contends, his trial counsel effectively admitted to the factual elements of felony murder, as well as to the factual elements underlying both aggravating circumstances found by the jury to support his death sentence.

Prior to closing arguments at the guilt phase of Lawrence's trial, Lawrence's counsel informed the trial court that Lawrence had signed a document authorizing them to pursue diminished capacity and voluntary intoxication defenses with respect to all of the crimes charged in the indictment. (J.A. at 10-11, 19-20.) Specifically, the authorization stated that counsel would contest Lawrence's ability to form the specific intent necessary to commit "capital murder, conspiracy to commit murder, kidnapping, conspiracy to kidnap, burglary and rape." (J.A. at 10-11.) Upon being made aware of the authorization, the trial judge questioned Lawrence and his counsel to ensure that Lawrence understood exactly what he was consenting to in the autho-

rization. Lawrence informed the trial court that he had authorized his counsel to pursue the diminished capacity and voluntary intoxication defenses and to admit that he was "guilty of some things." (J.A. at 20.) Based on this authorization, Lawrence's counsel argued to the jury that it could convict him of second-degree murder, which, under North Carolina law, is a general intent crime, N.C. Gen. Stat. § 14-17, but argued that Lawrence could not be convicted for any other crimes charged in the indictment — including first-degree murder — because he lacked the requisite specific intent to commit the crimes due to his voluntary intoxication. Lawrence's counsel offered expert testimony purporting to show that he was intoxicated at the time he broke and entered McLean's trailer and killed him and that his intoxication prevented him from forming the specific intent to commit the charged crimes. The trial court instructed the jury that voluntary intoxication was a defense to all of the crimes charged in the indictment if it found that Lawrence's intoxication prevented him from forming the requisite specific intent.[4] (J.A. at 42-60.) The jury rejected Lawrence's defense and convicted him on all counts.

The MAR court held that Lawrence's ineffective-assistance claim was procedurally defaulted under North Carolina law and, alternatively, that the claim lacked merit. Although the district court held that Lawrence's claim was not procedurally defaulted, it nevertheless denied the claim on the merits. We are satisfied that Lawrence's ineffective assistance claim was procedurally defaulted, but even if we proceed to the merits, we agree with the MAR court and the district court that Lawrence's ineffective assistance claim is meritless.

1.

"Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of

---

[4]In North Carolina, for a defendant to be entitled to an instruction on voluntary intoxication, there must be evidence "that defendant's intoxication rendered him utterly incapable of forming a deliberate and premeditated intent to kill." *State v. Mash*, 372 S.E.2d 532, 537 (N.C. 1988) (internal quotation marks omitted).

federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice."[5] *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A state rule is adequate if it is "firmly established," *James v. Kentucky*, 466 U.S. 341, 348 (1984), and regularly and consistently applied by the state court, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988).

In dismissing Lawrence's motion, the MAR court rejected his ineffective-assistance claim as procedurally defaulted under N.C. Gen. Stat. § 15A-1419(a)(3) (2007). Section 15A-1419(a)(3) provides for denial of appropriate relief when "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." We have consistently held that § 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default. *McCarver*, 221 F.3d at 589; *Williams v. French*, 146 F.3d 203, 209 (4th Cir. 1998) ("The state procedural rule applied in this case, North Carolina General Statutes § 15A-1419(a)(3), is an independent and adequate state ground."). Although the Supreme Court of North Carolina has stated that allegations of ineffective assistance of counsel like Lawrence's are generally properly raised on collateral review, *State v. Fair*, 557 S.E.2d 500, 524 (N.C. 2001), North Carolina courts have held that ineffective assistance claims that are not brought on direct review can be procedurally defaulted under § 15A-1419(a)(3). Indeed, in both *McCarver* and *Williams v. French*, we concluded that petitioners' ineffective assistance claims were procedurally defaulted under § 15A-1419(a)(3). *McCarver*, 221 F.3d at 589; *Williams v. French*, 146 F.3d at 218.

Section 15A-1419(a)(3), however, "is not a general rule that any [ineffective assistance] claim not brought on direct appeal is forfeited on state collateral review. Instead, the rule requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review." *Fair*, 557 S.E.2d at 525 (quoting

---

[5]Lawrence does not argue that failure to consider his claim will result in a fundamental miscarriage of justice, and, in any event, we do not find, based on the record before us, that there would be a fundamental miscarriage of justice were we to refuse to consider his claim.

*McCarver*, 221 F.3d at 589). In this vein, the Supreme Court of North Carolina has held that ineffective assistance claims brought on collateral review are procedurally defaulted under § 15A-1419(a)(3) when the "cold record" reveals that no further investigation would have been required to raise the claim on direct review. *Fair*, 557 S.E.2d at 524.

Lawrence bases his ineffective-assistance claim in part on the Supreme Court of North Carolina's decision in *State v. Harbison*, 337 S.E.2d 504 (N.C. 1985). In *Harbison*, the Court held that a defendant receives ineffective assistance *per se* when trial counsel concedes guilt to the offense or to a lesser offense without the defendant's consent. *Id.* at 507. North Carolina courts have decided *Harbison* claims of ineffective assistance on direct review. *See, e.g.*, *State v. Thompson*, 604 S.E.2d 850, 876-80 (N.C. 2004) (denying defendant's *Harbison* claim on direct review).

Despite Lawrence's arguments to the contrary, we conclude, based on the "cold record," that Lawrence was in a position to bring his ineffective-assistance claim on direct appeal. The trial record contains Lawrence's signed authorization of defense theory; the colloquy between the trial court and Lawrence regarding the authorization; his counsel's statements regarding the authorization; and his trial counsel's arguments to the jury. No further investigation would have been required for Lawrence to have raised his ineffective-assistance claim on direct review, for everything he needed to bring the claim was contained in the trial record. We thus agree with the MAR court that Lawrence's ineffective-assistance claim is procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3), and we conclude that Lawrence has demonstrated neither cause to excuse his procedural default nor prejudice resulting from the default.

2.

Although we conclude that Lawrence's ineffective-assistance claim is procedurally defaulted, we nevertheless consider the merits of his claim. The MAR court concluded that, in addition to being procedurally defaulted, Lawrence's claim was without merit. The district court agreed with the MAR court that Lawrence's claim lacked merit. We agree with both.

Under *Strickland*, Lawrence must demonstrate that his trial counsel's performance not only fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 687-88, but also that he was actually prejudiced by that ineffectiveness, *id.* at 693-94. A showing of ineffective assistance under *Strickland* is hard enough (see our discussion above), but we also must conclude that the MAR court's denial of Lawrence's claim on the merits was contrary to, or an unreasonable application of, *Strickland* for habeas relief to be proper. 28 U.S.C.A. § 2254(d)(1).

As recounted above, prior to closing arguments, Lawrence authorized his counsel to pursue diminished capacity and voluntary intoxication defenses for all of the crimes charged in the indictment. Based on this authorization, Lawrence's trial counsel conceded his guilt for second-degree murder, but *denied* his guilt for first-degree murder, burglary, kidnapping, conspiracy to commit kidnapping, and conspiracy to commit murder on the bases of his voluntary intoxication.

The MAR court concluded that, under *Strickland*, Lawrence received effective assistance of counsel because he "knowingly and understandingly authorized trial counsel to concede commission of the acts underlying all of the charged offenses in order to deny specific intent and raise the defenses of diminished capacity and voluntary intoxication." (J.A. at 693.) The MAR court also stated that, even assuming that Lawrence's trial counsel made some errors, there was "no reasonable probability that, but for the error or errors, there would have been a different result in the proceedings." (J.A. at 713.)

The trial record reveals that Lawrence knew that his counsel would be admitting his guilt to "some things," and that the trial court in fact instructed the jury on voluntary intoxication for each of the charged offenses. Lawrence acknowledges that his counsel had to concede that he committed the acts underlying the charged crimes in order to raise the diminished capacity and voluntary intoxication defenses. Taking these facts into consideration, what is left of Lawrence's argument is his disagreement with the results of his trial, but effective trial counsel cannot always produce a victory for the defendant. "[I]f counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain." *Florida v. Nixon*, 543 U.S.

175, 192 (2004). Lawrence was fully apprised of his trial counsel's defense strategy before closing arguments, and he consented to the plan of attack. He cannot now claim error in the very strategy that he authorized, particularly given that his counsel's pursuit of a voluntary intoxication defense fit the circumstances of the case.

In sum, Lawrence has come forth with no evidence to rebut the MAR court's factual findings, which are binding on us, *see* 28 U.S.C.A. § 2254(e)(1), and he does not argue that the MAR court's denial of his ineffective claim was an unreasonable application of, or contrary to, *Strickland*. Indeed, the MAR court did not apply *Strickland* incorrectly, let alone unreasonably. Accordingly, under the AEDPA, we must affirm the district court's denial of a habeas writ to Lawrence on this ineffective-assistance claim.

## B.

Finally, Lawrence cross-appeals the district court's grant of summary judgment to the State on his due-process claims arising from the MAR court's adjudication of his post-conviction motion. Lawrence alleges two errors in the MAR court proceedings. First, he contends that the MAR court violated his due-process rights by permitting the same judge that presided over his trial to rule on his MAR. Lawrence claims that this arrangement deprived him of an unbiased review of his MAR. Second, Lawrence contends that the MAR court violated his due-process rights when it instructed counsel for the State to "draft [an] order summarily denying all of [Lawrence's] claims," (J.A. at 645), without specifying the grounds for denial.

We agree with the district court that Lawrence's due-process claims are not cognizable on federal habeas review. Pursuant to § 2254, a petitioner may obtain relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). A state prisoner has no federal constitutional right to post-conviction proceedings in state court. *Lackawanna County Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2001) (noting that "each State has created mechanisms for both direct appeal and state postconviction review, even though there is no constitutional mandate that they do so" (internal citations omitted)); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).

Thus, even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief."); *see also Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas application." (internal citations, quotation marks, and alteration omitted); *United States v. Dago*, 441 F.3d 1238, 1248 (10th Cir. 2006) ("[D]ue process challenges to post-conviction procedures fail to state constitutional claims cognizable in a federal habeas proceeding."). Accordingly, because Lawrence's due-process claims relate only to the MAR court's adjudication of his state post-conviction motion, we are without power to consider them. We therefore affirm the district court's denial of a habeas writ to Lawrence on his due-process claims relating to the MAR court proceedings.

IV.

For the reasons stated in Part II of the opinion, we reverse the district court's order issuing a writ of habeas corpus to Lawrence and vacating his death sentence. For the reasons stated in Part III of the opinion, we reject Lawrence's cross-appeal and affirm the district court's denial of his claims.

*AFFIRMED IN PART;*
*REVERSED IN PART*