Filed: April 23, 2008

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 07-3
(2:05-cv-00502-WDK)

KENT JERMAINE JACKSON,

Petitioner - Appellant,

versus

GENE M. JOHNSON, Director, Virginia
Department of Corrections,

Respondent - Appellee.

O R D E R

The court amends its opinion filed April 15, 2008, as follows:

On page 2, first paragraph of opinion text, on lines 3 and 4, "first-degree" is deleted and replaced with the word "capital," and on line 7, "first-degree" is deleted.

On page 4, first paragraph, on line 2, the word "capital," is added before the word "premeditated," and on line 4, following "attempted robbery," the language "a violation of Va. Code Ann. § 18.2-31(4) (2004 & Supp. 2007)," is added.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KENT JERMAINE JACKSON,
            *Petitioner-Appellant,*

v.

GENE M. JOHNSON, Director,
Virginia Department of Corrections,
            *Respondent-Appellee.*

No. 07-3

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Walter D. Kelly, Jr., District Judge.
(2:05-cv-00502-WDK)

Argued: March 20, 2008

Decided: April 15, 2008

Before WILLIAMS, Chief Judge, and NIEMEYER
and DUNCAN, Circuit Judges.

Affirmed by published opinion. Chief Judge Williams wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

## COUNSEL

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appellant. Steven Andrew Witmer, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Andrew A. Protogyrou, PROTOGYROU & RIGNEY, P.L.C., Norfolk, Virginia, for Appellant. Robert F. McDonnell, Attor-

ney General of Virginia, Jerry P. Slonaker, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

---

**OPINION**

WILLIAMS, Chief Judge:

On April 18, 2000, Petitioner Kent Jermaine Jackson brutally killed Beulah Mae Kaiser, a 79-year-old woman who lived in the apartment across the hall from him. A Virginia jury convicted Jackson of capital, premeditated murder during the commission of a robbery or attempted robbery, robbery, felony stabbing, and burglary, all in connection with Kaiser's death. The jury sentenced him to death for the murder conviction.

After unsuccessfully working his way through Virginia's direct-appeal and post-conviction review processes, Jackson filed a petition under 28 U.S.C.A. § 2254 (West 2006) seeking habeas relief in federal court. In his federal habeas petition, Jackson raised numerous claims, including a claim that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to object to the Commonwealth of Virginia's closing argument at his sentencing, an argument that Jackson claims rendered his trial fundamentally unfair and violated the Due Process Clause of the Fourteenth Amendment. The district court denied Jackson's petition, and, for the reasons that follow, we affirm.

I.

A.

The grisly facts of Kaiser's murder, as recounted by the Supreme Court of Virginia in its opinion in Jackson's direct appeal, are as follows:

> On April 18, 2000, the body of Beulah Mae Kaiser, 79 years of age, was found in her apartment. According to the medi-

cal examiner, Mrs. Kaiser died from a combination of a stab wound to her jugular vein, a fractured skull, and asphyxia caused by blockage of her airway by her tongue. Any one of these injuries could have been fatal. In addition to these injuries, Mrs. Kaiser suffered two black eyes, a broken nose, and multiple abrasions, lacerations, and bruises. She had five stab wounds to her head and neck, including the wound to her jugular vein. The medical examiner also testified that Mrs. Kaiser had been anally sodomized with her walking cane and that the cane then had been driven into her mouth with such violence that it knocked out most of her teeth, tore her tongue and forced it into her airway, fractured her jaw, and penetrated the left side of her face.

When Mrs. Kaiser's body was found, her apartment was in disarray. Personal items were strewn throughout the apartment, blood spatters were on the surfaces of the apartment, and the contents of Mrs. Kaiser's purse had been dumped on the floor. The police were unable, however, to find a weapon or any fingerprints of value.

The crime went unsolved for over 16 months until DNA testing of saliva on a cigarette butt found in the apartment implicated an individual named Cary Gaskins. An interview with Gaskins led the police to Joseph M. Dorsett and [Kent Jermaine] Jackson, who had been roommates in an apartment across the hall from Mrs. Kaiser's apartment at the time of her death. Following an interview with Dorsett, Newport News police arrested Dorsett, charging him with Mrs. Kaiser's murder, and obtained a warrant for Jackson's arrest.

Police arrested Jackson at a girlfriend's home in King George County around 4:00 a.m. on August 29, 2001. During an interview with Newport News police detectives at the King George County jail that afternoon, Jackson confessed to the murder of Mrs. Kaiser.

*Jackson v. Commonwealth*, 587 S.E.2d 532, 537-38 (Va. 2003).

B.

On January 14, 2002, a grand jury in the Circuit Court for the City of Newport News, Virginia indicted Jackson, charging him with capital, premeditated murder in the commission of a robbery or attempted robbery, a violation of Va. Code Ann. § 18.2-31(4) (2004 & Supp. 2007), robbery, felony stabbing, burglary, and object sexual penetration.[1] *Id.* at 538. In December of the same year, a jury convicted Jackson of all counts except the object sexual penetration count.

Pursuant to Virginia law, a capital sentencing proceeding was held. Va. Code Ann. § 19.2-264.4 (2004). The jury found "unanimously and beyond a reasonable doubt that [Jackson's] conduct in committing the offense was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder." (J.A. at 1090 (tracking language from Va. Code § 19.2-264.4(C)).) Based on this finding, the jury recommended that Jackson be sentenced to death. The trial court accepted the jury's recommendation and imposed a death sentence.

Jackson appealed, and the Supreme Court of Virginia unanimously affirmed his convictions and death sentence, *Jackson*, 587 S.E.2d at 546. The U.S. Supreme Court later denied his petition for a writ of certiorari, *Jackson v. Virginia*, 543 U.S. 842 (2004).

Shortly thereafter, the trial court appointed Jackson new counsel to represent him in state post-conviction proceedings, and on December 2, 2004, Jackson filed a habeas corpus petition in the Supreme Court of Virginia, raising a host of federal constitutional claims. One of Jackson's claims focused on the Commonwealth's closing argument at his sentencing: Jackson argued that, under *Strickland*, his trial counsel was ineffective because he did not object to the Commonwealth's comparing Jackson to his victim and urging the jury to choose a death sentence based on this comparison. On July 10, 2005, the Supreme Court of Virginia denied Jackson's petition in a lengthy order, and the U.S. Supreme Court denied Jackson's attendant certio-

---

[1] The grand jury also indicted Dorsett on the same charges. According to Jackson's brief, "Dorsett received multiple terms of years for these crimes." (Petitioner's Br. at 9.)

rari petition on August 26, 2005. *Jackson v. True*, 545 U.S. 1160 (2005).

Jackson then turned to the federal courts for habeas relief, filing a 28 U.S.C.A. § 2254 petition in the Eastern District of Virginia that raised essentially the same federal constitutional claims presented in his state habeas petition. The Commonwealth filed a motion to dismiss the petition, and a magistrate judge issued a report and recommendation that the petition be dismissed. On March 30, 2007, the district court accepted the magistrate judge's recommendation and dismissed Jackson's habeas petition.

Jackson timely appealed, and on October 15, 2007, during the pendency of the appeal, the district court granted Jackson a certificate of appealability ("COA") on the following issue: whether, under *Strickland*, Jackson's trial counsel was ineffective for failing to object to the Commonwealth's victim-to-defendant comparison at sentencing.[2]

## II.

## A.

We review *de novo* the district court's denial of Jackson's § 2254 petition based on the record before the Supreme Court of Virginia, applying the same standards as did the district court. *Robinson v. Polk*, 438 F.3d 350, 354 (4th Cir. 2006). Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the scope of our review is highly constrained. We may grant a petition with respect to any claim adjudicated on the merits in state court only if the state-court decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C.A. § 2254(d)(1).

A decision of a state court is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

---

[2]We denied Jackson's motion to expand the COA beyond this issue.

decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court adjudication is an unreasonable application of federal law when the state court "correctly identifies the governing legal rule [from the Supreme Court's cases] but applies it unreasonably to the facts of a particular . . . case," *id.* at 407-08, or "applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply the principle of a precedent in a context where such failure is unreasonable," *Robinson*, 438 F.3d at 355 (internal quotation marks and citation omitted). The state court's application of clearly established federal law must be "objectively unreasonable," for a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly." *Williams*, 529 U.S. at 409, 411. The phrase "clearly established federal law" refers "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.

In deciding whether a petitioner has demonstrated the deficiency of the state-court adjudication under § 2254(d), we must presume state-court findings of fact to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1).

B.

1.

This appeal focuses on the Commonwealth's closing argument at the sentencing phase of Jackson's trial. The argument proceeded as follows:

> Ladies and gentlemen, because the Commonwealth has proved the aggravating factors does not mean that you're required to find that death is the appropriate punishment. You may impose the death penalty. You may.

What you have to do is weigh the evidence to include the evidence in mitigation. You've taken an oath to take that into consideration as well. Weigh the evidence to include the defendant's evidence in mitigation against the defendant's conduct in committing the crime; the helplessness of the victim and the effects that Kent Jackson's crime has had on Beulah Mae Kaiser's family, friends and this community.

That is what the Commonwealth is asking you to do. The defendant's conduct we've already talked about; clearly horrible, inhuman. Is there any question this was a defenseless woman? From what you have heard about her, she had arthritis, she got around on a walker, she probably would have given Mark Dorsett and Kent Jackson anything they wanted. There was no need for this. None. It didn't have to happen.

What's the evidence in mitigation against this? You've heard from his family. Kent Jackson came from a very good family. There's no doubt about that. The people that took that stand told the truth about what they know about this person, and when they looked at the Kaiser family and said they were remorseful for what he did and that they truly felt pain for this family, they meant it.

I know that every single one of you felt that. They meant it from the bottom of their hearts, and the Kaiser family felt it, too.

What did you see from him? He strolled to this witness stand with his hands in his pockets. Said Mark Dorsett may have had an influence on Kent Jackson's life, but when he picked up that sharp instrument, he made the decision to thrust it into Beulah Kaiser's throat. Mark Dorsett didn't make it for him. As she laid there and he was kicking her on the ground, he made that decision.

Mark Dorsett didn't make it for him. Mark Dorsett will be held answerable another day. Today is Kent Jackson's day to be answerable for what he chose to do and what he did

to this woman. Look at the effects that this crime has had on Beulah Mae Kaiser's family, friends and on this community.

As I listened to this testimony today, I couldn't help but realize that what we're talking about here are two lives that were completely opposite. You had Beulah Mae Kaiser who literally during her life lost everything material, just about everything you can lose, and who only sought to give. She lost what she had and she wanted to give more.

Then you have Kent Jackson who was given everything and only sought to take more. This family has lost an incredible person. I've only gotten to know Beulah Kaiser through talking to family and friends, but from what you have heard about her, it's not only clear that this family lost her, we lost her. People like her don't come along every day. She was a gift to the community, and when Kent Jackson went in there that day and took rings and coins and worthless trinkets, he took something far more valuable, something that can never be replaced.

Weigh the life he had against what he has taken, and when you do you will know that the appropriate punishment for capital murder is death.

(J.A. at 1014-1016.)

In his Virginia habeas petition, Jackson contended that his trial counsel was constitutionally ineffective for failing to object to this closing argument because the Commonwealth's comparison of Jackson to his victim severely prejudiced the proceedings, thus rendering the trial fundamentally unfair and violative of the Fourteenth Amendment's Due Process Clause. Although Jackson acknowledged that the U.S. Supreme Court approved of the use of victim-impact evidence in *Payne v. Tennessee*, 501 U.S. 808 (1991), he argued that our panel decision in *Humphries v. Ozmint*, 366 F.3d 266 (4th Cir. 2004), made clear that *Payne* does not allow for the kind of victim-to-defendant comparison that the Commonwealth made during its closing.

The Supreme Court of Virginia rejected Jackson's *Strickland* claim on the merits. Rendering its decision on Jackson's habeas petition *after* the en banc *Humphries* court vacated the panel opinion and reinstated the death sentence in that case, *Humphries v. Ozmint*, 397 F.3d 206, 226-27 (4th Cir. 2005)(en banc), the Supreme Court of Virginia ruled as follows:

> The Court holds that [Jackson's ineffective-assistance] claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. This Court has previously held that "victim impact testimony is relevant to punishment in a capital murder prosecution in Virginia." *Weeks v. Commonwealth*, 450 S.E.2d 379, 389-90 (1994). The record, including the trial transcript, demonstrates that the Commonwealth's comments about the victim and petitioner were based on evidence already in the record. Petitioner does not argue that the comments, standing alone, were factually inaccurate or unsupported by the record. Petitioner concedes that the United States Supreme Court approved the use of victim impact evidence in *Payne v. Tennessee*, 501 U.S. 808 (1991), but argues there is a judicial movement towards recognizing that victim impact statements and argument could be "so unduly prejudicial that it renders the trial fundamentally unfair." *Id.* at 825. In support of this argument, petitioner asks this Court to consider *Humphries v. Ozmint*, 366 F.3d 266 (4th Cir. 2004). The United States Court of Appeals, however, has since vacated that panel opinion and affirmed the judgment of the district court, holding that the South Carolina Supreme Court did not err when it held that the solicitor's comparison of the defendant's life to that of the victim in closing argument during the sentencing phase did not render the trial fundamentally unfair. *Humphries v. Ozmint*, 397 F.3d 206, 226 (4th Cir. 2005)(en banc). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(J.A. at 1613-14.)

2.

We do *not* have before us, as we would on direct appeal, the question of whether the victim-to-defendant comparison made by the Commonwealth at Jackson's trial violated the Due Process Clause of the Fourteenth Amendment. The only question before us—nothing more, nothing less—is whether the Supreme Court of Virginia unreasonably applied *Strickland* in denying Jackson habeas relief on his ineffective assistance claim.

To show that counsel rendered ineffective assistance, a defendant must satisfy the two-pronged standard set forth in *Strickland*. First, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness" in light of the prevailing professional norms. *Strickland*, 466 U.S. at 688. Second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Supreme Court has admonished that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also id.* (directing that "[j]udicial scrutiny of counsel's performance must be highly deferential"). "Given this strong presumption of reasonable performance, it is no wonder that we have stated that the showing required under *Strickland*'s first prong is a 'difficult' one to make." *Lawrence v. Branker*, ___ F.3d ___, 07-2 slip op. at 10 (4th Cir. Feb. 22, 2008) (citing *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)). "Moreover, even if a petitioner is able to show that his counsel's performance fell below an objectively reasonable standard, he has won only half the battle, for he must also show that, absent his counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different." *Id.*

Thus, in order for Jackson to prevail on his *Strickland* claim, he must show both that his trial counsel's failure to object to the Commonwealth's closing argument fell below an objective standard of reasonableness *and* that, but for this failure, there is a reasonably probability that the jury would not have sentenced him to death. Moreover, in order to prevail in this federal habeas petition, he must

show that the Supreme Court of Virginia was unreasonable in its application of *Strickland*.

3.

The parties agree that the U.S. Supreme Court's decision in *Payne v. Tennessee* is the pivotal precedent here. Faced with the question of what evidence should be allowed at the sentencing phase of capital trials, the *Payne* Court held that states "may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." 501 U.S. at 827. If a state permits this type of victim-impact evidence at the sentencing phase of capital trials, the Court held that "the Eighth Amendment erects no *per se* bar." *Id.* Subsequent to the *Payne* decision, the Commonwealth of Virginia has approved of the admission of victim-impact evidence at the sentencing phase of capital trials. *Weeks v. Commonwealth*, 450 S.E.2d 379, 389-90 (Va. 1994).

Jackson concedes, as he did before the Supreme Court of Virginia, that *Payne* permits the admission of victim-impact evidence at capital trials, but he claims that *Payne* clearly established that arguments of the sort made by the Commonwealth at his trial—those he styles as comparing the worth of the victim to the defendant—render capital trials fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment.

Our en banc court has previously rejected this very characterization of *Payne*. *See Humphries*, 397 F.3d at 224. In *Humphries*, we stated what is obvious from the *Payne* opinion itself: "the *Payne* Court did not disapprove of comparisons between the defendant and the victim." *Id.* at 224. The *Payne* Court did allow for the possibility that a petitioner could make out a Fourteenth Amendment due-process claim "[i]n the event that [victim-impact] evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair," 501 U.S. at 825, but it *did not* "set the parameters of what type of victim-impact evidence would render a trial fundamentally unfair under the Due Process Clause of the Fourteenth Amendment," *Humphries*, 397 F.3d at 218. *See also id.* at 231 (Luttig, J., concurring)(noting that *Payne* does not address victim-to-defendant

comparisons); *Humphries v. State*, 570 S.E.2d 160, 167 (S.C. 2002) ("*Payne* does not indicate any concern about comparisons between the victim and the defendant."). Indeed, as the *Humphries* en banc court pointed out, *Payne*'s only reference to comparative worth arguments was its observation that, as a general matter, victim impact evidence is not offered to make *victim-to-victim* comparisons. *Humphries*, 397 F.3d at 224 (citing *Payne*, 501 U.S. at 823). Because *Payne* does not expressly disapprove of victim-to-defendant comparisons at trial, we held in *Humphries* that the South Carolina Supreme Court did not unreasonably apply *Strickland* in concluding that Humphries's trial counsel was constitutionally effective despite not objecting to the comparisons between Humphries and his victim. *Humphries*, 397 F.3d at 222-23.

The same reasoning holds true in this case. In light of *Payne*'s silence regarding victim-to-defendant comparisons, we cannot say that the Supreme Court of Virginia unreasonably applied *Payne* in rejecting Jackson's purported comparative-worth argument. More to the point, we believe that a reasonable attorney in the shoes of Jackson's trial counsel would not have felt compelled by *Payne* to object on the ground that the Commonwealth's closing argument violated Due Process. Even assuming *arguendo* that Jackson's counsel should have objected to the Commonwealth's closing argument, however, Jackson has not demonstrated a reasonable probability that the objection would have led to a result other than a death sentence. As was true in *Humphries*, the evidence concerning the appropriate sentence for Jackson was "not close." *Humphries*, 397 F.3d at 222. Jackson confessed to murdering Beulah Mae Kaiser, and the autopsy revealed the brutality of the murder. The Commonwealth's closing argument surely "did not inflame [the jury's] passions more than did the facts of the crime." *Payne*, 501 U.S. at 831 (O'Connor, J., concurring).

III.

In sum, we cannot say that the Supreme Court of Virginia incorrectly, let alone unreasonably, applied *Strickland* in denying Jackson habeas relief. Accordingly, for the aforesaid reasons, the judgment of the district court is

*AFFIRMED.*