SHEDD, Circuit Judge:
Donald Allison Blount, Jr., a North Carolina inmate, appeals the dismissal of his petition for a writ of habeas corpus. Blount was convicted by a North Carolina court of first-degree rape of a child, first-degree sex offense, and taking indecent liberties with a child. He was sentenced to a range of 336 to 413 months imprisonment. We granted a certificate of appeal-ability (“COA”) to determine whether the state trial court’s admission of out-of-court statements made by the child victim to therapists violates the Sixth Amendment right to confront witnesses. For the following reasons, we affirm.
I.
We begin with a summary of the facts pertaining to the underlying crime, as articulated by the North Carolina Court of Appeals in an unpublished opinion in Blount’s direct appeal:
“S.F. (victim or child) was three years old when her mother ... began living with defendant (who is not the child’s father). Defendant and mother smoked marijuana and used cocaine on a regular basis. In November of 2002 they were living with defendant’s mother because neither of them were employed. Defendant and mother shared a bed, and the victim slept in a child’s bed in the same room.
“One evening, about the sixteenth of November, 2002, defendant and mother went to bed after using marijuana and cocaine. The victim was already asleep in her bed. At trial, mother testified that she awoke to see defendant standing at the foot of the victim’s bed. She saw defendant remove the victim’s clothes, remove his clothes, apply lotion to her and himself, and briefly insert his penis into the child’s vagina. Defendant left the room, returned, re-dressed and returned to bed. Mother went back to sleep without saying anything, because she feared defendant.
“The victim eventually told what had happened to her to four different people. The victim moved in with her maternal grandmother ..., because her mother and defendant had no stable housing. Grandmother testified that though the victim had been a happy-go-lucky child before, when she came to live with her after 16 November 2002 she clung to the grandmother and did not eat or sleep well. The victim complained of pain in her vaginal area, which was red, and stated she was having difficulty urinating.
“In December of 2002, grandmother took the child to a pediatrician, who informed grandmother that the child had gonorrhea. Grandmother did not know who had given the victim gonorrhea, but on 25 January 2003 the child told her that she had a secret. She climbed onto grandmother’s lap, crying, and told her that her mother had held her down while defendant inserted a ‘black needle with white medicine’ into her vagina. The victim then stated that her mother and defendant took her into the bathroom and cleaned her up, that her vagina hurt and bled a little, and that they told her what had happened was a big secret and that she would have her toys taken away and be punished if she told anyone.
“A friend (Lisa) was living with grandmother on 25 January 2003 when the vie *273 tim told grandmother what had happened to her, and she heard the conversation. Her account of what the victim said that night was consistent with that of the grandmother.
“Wendy Meadows ... was a counselor working for Kids First child advocacy center in December 2002 when the victim was referred to her by Department of Social Services. She testified that the victim told her in their second session: ‘They gave me candy and told me not to tell.’ In their third session, the victim told Meadows that, while holding her legs, defendant put a black needle with white medicine in her vagina, while her mother held her down by the neck. Meadows had two sets of anatomical dolls, one a white family and one a black family. Meadows asked the victim to show her what had happened using the dolls. The victim chose a girl doll and laid it on the table, saying the doll was lying on a bed, she then chose an adult female doll, indicated that it was her mother, and used the hands of that doll to press down on the neck of the girl doll. She then chose a black doll, and indicated it was defendant. She first had the male doll touch the girl doll in the area of its vagina, then she told Meadows that defendant put a needle in her. When asked to show how defendant did this, the child ‘took the black adult male doll and laid it on top of the girl doll that was lying on the table.’ Finally, the victim told Meadows that ‘it hurt, and I cried.’
“The victim was referred to another counselor, Kelly Roberts.... According to Roberts’ testimony, on their sixth session, the victim told Roberts the same story she had told the other women: her mother held her down by the neck and arms, while defendant first touched her vagina then inserted a black needle with white medicine into her. After her first revelation to Roberts, the victim repeatedly said, ‘[Mother] and [defendant] hurt me.’ The victim repeated this story multiple times in following sessions, and her story remained consistent. The victim also drew pictures depicting the events she had described ....
“Dare County Department of Social Services became involved in the matter in December of 2002, after it was informed that the child had gonorrhea. Department of Social Services arranged for both defendant and mother to be tested for gonorrhea, but neither kept the appointments. Mother was never tested for gonorrhea. Pursuant to a court order, defendant was tested on 15 March 2004 (approximately sixteen months after the event in question), and the results were negative for gonorrhea. Dr. Lisa M. Johnson testified that if a person had been successfully treated for gonorrhea, any later test would be negative.” J.A. 381-82.
II.
A.
At trial, S.F. was called as a witness but was unable to respond in any meaningful manner to the questions posed to her. The trial court determined that she was unavailable as a witness. Among others, Meadows and Roberts were called as witnesses by the State. They testified as to what S.F. had told them, including testimony that Blount had sexually abused her.
Blount argued in state court proceedings that allowing Meadows and Roberts to testify as to what S.F. told them is a violation of his Sixth Amendment right of confrontation. See Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[1] In analyzing Blount’s Crawford *274 claim on direct appeal, the North Carolina Court of Appeals noted that “Hollowing Crawford) the determinative question with respect to confrontation analysis is whether the challenged hearsay statement is testimonial.” J.A. 383. (internal citation and quotation marks omitted). The court of appeals further observed that “[t]he United States Supreme Court determined in Crawford that ‘at a minimum’ the term testimonial applies to ‘prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.’” Id. (internal citation omitted) (emphasis in original). Finally the court of appeals stated:
[the North Carolina] Supreme Court has also recognized in Crawford an additional prong necessary to show that a statement is testimonial. This ‘additional prong of the analysis for determining whether a statement is ‘testimonial’ is, considering the surrounding circumstances, whether a reasonable person in the declarant’s position would know or should have known his or her statements would be used at a subsequent trial. This determination is to be measured by an objective, not subjective, standard.’
Id. (citation omitted).
With this understanding of Crawford, the court of appeals reviewed the record regarding S.F.’s declarations to the therapists. The court of appeals stated that Meadows was in private practice, never encouraged S.F. to disclose the abuse, and there was no evidence that Meadows ever discussed the potential for any criminal consequences or punishment for Blount. See Id. As for Roberts, the court of appeals observed that she told S.F. that their sessions were confidential and that she would not disclose what S.F. said, and there was no evidence that S.F. was made aware that her statements could be used against Blount or that Roberts ever discussed any potential punishment for Blount. See Id. at 384. Finally, the court of appeals held that
In light of the fact that the young victim in the instant case was speaking with therapists, not police officers, and that the record is devoid of any evidence that she had the slightest inkling that defendant faced criminal charges, or even that she understood what criminal charges were, we hold that her statements to Meadows and Roberts were not testimonial for Confrontation Clause purposes. A reasonable three or four year old in the victim’s situation would not have had any reason to know that her statements would be used at a subsequent trial.
Id. (emphasis in original).
B.
Blount filed his habeas petition in the district court arguing that the North Carolina Court of Appeals applied Crawford incorrectly. In response, the state moved for summary judgment on Blount’s claim. The district court granted the motion and dismissed Blount’s habeas petition.
We review the district court’s dismissal of Blount’s petition de novo. See Tucker v. *275 Ozmint, 350 F.3d 433, 438 (4th Cir.2003). However, under 28 U.S.C. § 2254, “the scope of our review is highly constrained.” Jackson v. Johnson, 523 F.3d 273, 276 (4th Cir.2008). We may only grant Blount relief if the state court’s adjudication of his claim (1) “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” 28 U.S.C. § 2254(d)(1); or (2) “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,” 28 U.S.C. § 2254(d)(2).
The “contrary to” and “unreasonable application” clauses of § 2254(d) have independent meanings. Tucker, 350 F.3d at 438. A state court’s decision is “contrary to” clearly established federal law under § 2254(d)(1) when it “applies a rule that contradicts the governing law set forth” by the United States Supreme Court, or “confronts a set of facts that are materially indistinguishable from a decision of ... [the Supreme] Court and nevertheless arrives at a result different from ... [that] precedent.” Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
A state court’s decision involves an “unreasonable application” of clearly established federal law under § 2254(d)(1) “if the state court identifies the correct governing legal rule from ... [the Supreme] Court’s cases but unreasonably applies it to the facts of the particular state prisoner’s case.” Williams, 529 U.S. at 407, 120 S.Ct. 1495. This standard is quite deferential: “The state court’s application of clearly established federal law must be ‘objectively unreasonable,’ and ‘a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.’” Robinson v. Polk, 438 F.3d 350, 355 (4th Cir.2006) (quoting Williams, 529 U.S. at 411, 120 S.Ct. 1495). Moreover, when “assessing the reasonableness of the state court’s application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned.” Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir.2003) (quotation marks omitted).
C.
Blount argues that his Sixth Amendment right of confrontation was violated when Meadows and Roberts, acting in an investigatory and prosecutorial role, testified to the statements S.F. had made, thereby making S.F.’s statements “testimonial.” He therefore contends that he is entitled to habeas relief. In granting summary judgment, the district court held that “[c]ontrary to Petitioner’s conclusion, the North Carolina Court of Appeals’ adjudication of the Confrontation Clause issue is not contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.” J.A. 424. In holding that Blount’s claim lacks merit, the district court noted that Blount “has pointed to nothing in the evidence to show that the victim knew or had reason to know that her revelations to Meadows and Roberts would be used against Petitioner at trial.” Id.
We agree with the district court that the North Carolina Court of Appeal’s determination of this issue is not unreasonable.[2]
*276 The state court properly analyzed this claim under Crawford and concluded that S.F. could not have known that her statements to the therapists would be used at trial against Blount. Under our review, the North Carolina Court of Appeals’ conclusion that S.F.’s statements to her therapists were not “testimonial” is not contrary to or an unreasonable application of federal law. See e.g., United States v. Peneaux, 432 F.3d 882, 896 (8th Cir.2005) (holding the admission of statements to a physician by a child regarding physical abuse does not violate the Sixth Amendment light to confrontation); State v. Vaught, 268 Neb. 316, 682 N.W.2d 284, 293 (2004) (holding the admission of a statement by a child victim to her physician that the defendant had sexually assaulted her was not testimonial). Therefore, we affirm the dismissal of Blount’s habeas petition.
III.
Based on the foregoing, we affirm the district court’s order dismissing Blount’s habeas petition.

AFFIRMED.

. We granted a COA on "[wjhether Blount's Sixth Amendment right to confront witnesses *274 against him, as articulated in Crawford .. was violated by the admission at trial of out-of-court statements made by a child witness to therapists, who were under a known legal duty to report those statements to the state for possible use at trial.” The government asks us to dismiss the COA as improvidenlly granted because the "legal duty to report” portion of the COA is raised for the first time before us and is therefore procedurally barred. At oral argument, Blount argued that the issue before us was the same Crawford claim that he raised in each proceeding below, and that the mandatory reporting requirement is not the issue he asked us to review, but rather was a small facet of his argument. We decline to dismiss the COA, and we address the claim as presented to us.

. We note that a state court is given more latitude to reasonably interpret federal law when the federal law involves, as here, a general standard set forth by the Supreme *276 Courl. See Yarborough v. Alvarado, 541 U.S. 652. 664. 124 S.Ct. 2140. 158 L.Ed.2d 938 (2004).