**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-8374

WILLIAM HARVEY COUSINS,

Petitioner – Appellant,

v.

KATHLEEN S. GREEN, Warden; DOUGLAS F. GANSLER, Attorney
General of Maryland,

Respondents – Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Catherine C. Blake, District Judge.
(1:06-cv-01053-CCB)

Argued:  January 25, 2011          Decided:  March 16, 2011

Before KING, AGEE, and DAVIS, Circuit Judges.

Affirmed by unpublished opinion.  Judge King wrote the opinion,
in which Judge Agee and Judge Davis joined.

**ARGUED**:  Katie Serfas, WAKE FOREST UNIVERSITY, School of Law,
Appellate Advocacy Clinic, Winston-Salem, North Carolina, for
Appellant.  Mary Ann Rapp Ince, OFFICE OF THE ATTORNEY GENERAL
OF MARYLAND, Baltimore, Maryland, for Appellees.  **ON BRIEF:** John
J. Korzen, Director, Megan Elizabeth Bode, Eleanor Rhoades
Trefzger, WAKE FOREST UNIVERSITY, School of Law, Appellate
Advocacy Clinic, Winston-Salem, North Carolina, for Appellant.
Douglas F. Gansler, Attorney General of Maryland, Baltimore,
Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

William Harvey Cousins, a Maryland prisoner, appeals from the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition, in which he asserts that a violation of his Sixth Amendment right to the effective assistance of counsel undermines his Maryland convictions. See Cousins v. Green, No. 1:06-cv-01053 (D. Md. Oct. 10, 2008) (the "Federal Opinion").[1] More specifically, as spelled out in our certificate of appealability (the "COA"), Cousins maintains that his "trial counsel provided ineffective assistance by failing to adequately investigate and discover an exculpatory witness" (the "Ineffective Assistance Claim," or the "Claim"). For the reasons explained below, we reject the Ineffective Assistance Claim and affirm the district court.

I.

A.

In August 1996, Cousins was tried in the Circuit Court for Prince George's County, Maryland, on charges of first-degree murder and use of a handgun in the commission of a crime of violence, arising from the December 22, 1995 shooting death of

---

[1] The unpublished Federal Opinion is found at J.A. 1113-29. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

Steven Moeller. The prosecution's theory was that Cousins had been involved in a traffic dispute with Moeller, threatened to kill him, and followed up on the death threat by shooting Moeller a few days later. Lacking eyewitness testimony, the prosecution relied heavily at trial on two witnesses who said that Cousins had confessed to Moeller's shooting: Ebony Coleman, a former friend of Cousins; and Betty Mills, who was Coleman's aunt. The defense theory was that Coleman himself was the likely shooter, and that Cousins was the "victim of a cover-up designed to exonerate one person and implicate another." Br. of Appellant 3. In defending Cousins, his lawyer called three witnesses, including Cousins himself. The jury convicted Cousins on both charges — murder (albeit in the second degree) and use of a handgun in the commission of a crime of violence. On September 13, 1996, Cousins was sentenced to thirty years on the murder conviction, plus a consecutive term of twenty years on the handgun conviction.

B.

After his sentencing, Cousins appealed to the Court of Special Appeals of Maryland, raising several issues that are unrelated to the Ineffective Assistance Claim. Cousins's convictions and sentence were affirmed on appeal, see Cousins v. State, No. 1425 (Md. Ct. Spec. App. May 19, 1997), and the Court of Appeals of Maryland thereafter denied certiorari, see Cousins

4

v. State, 697 A.2d 913 (Md. 1997). Cousins then filed two state habeas corpus petitions — on December 18, 1997, and October 30, 1998 — both of which were withdrawn without prejudice. In his aborted state habeas petitions, Cousins presented multiple ineffective assistance claims that were also unrelated to the Claim before us today.

On March 5, 2002, Cousins, proceeding pro se, filed another petition for state habeas corpus relief in the Circuit Court for Prince George's County, for the first time raising the Ineffective Assistance Claim that underlies this appeal. Cousins maintained that his lawyer was constitutionally ineffective in failing to investigate and secure the testimony of an exculpatory eyewitness, William Smoot. The state habeas court appointed counsel for Cousins, who subsequently filed two supplemental habeas petitions.[2] The state court then conducted an evidentiary hearing on the Ineffective Assistance Claim, beginning on September 20, 2004, when it heard from two witnesses: Cousins and his trial lawyer. After those proceedings, the court continued the evidentiary hearing for

---

[2] In his various state habeas petitions, Cousins asserted at least four ineffective assistance claims, and also contended that the prosecution's failure to disclose an exculpatory police report violated Brady v. Maryland, 373 U.S. 83 (1963).

several months until Smoot, who was incarcerated, could appear and testify.

On March 7, 2005, Smoot testified before the state habeas court, asserting that, at the time of Moeller's shooting, Smoot was on his way to visit a friend, Ruth Wingate, who lived two doors from the Moeller murder scene. While exiting his vehicle, Smoot "heard some gunshots" and saw "somebody leaning out the window." J.A. 1009. That "somebody" was Ebony Coleman, one of the key prosecution witnesses against Cousins, and the person on whom the defense had sought to blame the Moeller murder. Id. at 1011. Smoot did not report what he saw to the police or anyone else, but instead fled the scene before seeing or speaking to Wingate.

In the state habeas court's evidentiary hearing, Smoot offered the following testimony concerning whether Wingate knew that he was near her home when the Moeller shooting occurred:

Q [Direct]: But she knew you were there when it happened based on your understanding?

A: Yes.

* * *

Q [Cross]: So when the shooting occurred Ms. Wingate didn't know that you were outside; is that correct?

A: Right.

* * *

6

Q [Redirect]: You testified on direct that Ruth Wingate did know you were there the night of the shooting?

A: She knew, she knew — she should have known that I was outside at the door because I was on my way to her house, I was at her house. She knew I was coming to her house.

\* \* \*

THE COURT: But did she know you were actually there?

A: She didn't know I was actually there at the time that incident occurred.

Q: But later she did find out that you were there?

A: Correct.

J.A. 1017-21. According to Smoot, at "some point after the shooting," he spoke with his friend Wingate, but failed to tell her what he had seen near her home on the occasion of Moeller's murder. Id. at 1019. Indeed, Smoot never specified when or how Wingate had "later" discovered that he was near her home when Moeller was shot.

In May 2005, two months after its evidentiary hearing, the state habeas court — applying Strickland v. Washington, 466 U.S. 668 (1984) (recognizing that ineffective assistance entails deficient performance and resulting prejudice) — rejected the Ineffective Assistance Claim, concluding that "there was no way for trial counsel to have discovered [Smoot] even after doing a reasonable investigation." State v. Cousins, No. 96-091X, slip

7

op. at 4 (Md. Cir. Ct. May 11, 2005) (the "State Opinion").[3] Ultimately, according to the State Opinion, "there was no way that trial counsel could have independently known of Mr. Smoot because he never came forward to the police nor did he tell anyone what he witnessed." Id. Thus, without reaching the question of whether Cousins's lawyer had performed deficiently, the state court denied the Claim for failure to show prejudice.

On June 10, 2005, Cousins filed an application in the Court of Special Appeals of Maryland for leave to appeal the state habeas court's rejection of the Ineffective Assistance Claim. That application for appeal was denied on October 26, 2005. On February 2, 2006, the Court of Special Appeals also denied a motion for reconsideration of its denial of an appeal.

C.

On April 26, 2006, Cousins, again proceeding pro se, filed his 28 U.S.C. § 2254 petition in the District of Maryland. His petition presented three constitutional contentions, including the assertion that his trial counsel was "ineffective for failing to investigate and subpoena a witness who saw another individual commit the murder." J.A. 7 (emphasis omitted).[4] By

---

[3] The State Opinion is found at J.A. 1072-82.

[4] The two other claims presented in Cousins's § 2254 petition were that the prosecution violated Cousins's Brady rights, and that Cousins's lawyer was constitutionally
(Continued)

the Federal Opinion of October 10, 2008, the district court denied Cousins's § 2254 petition in all respects. In disposing of the Ineffective Assistance Claim, the court explained that, "[g]iven the witness testimony provided at the post-conviction hearing, the state court's determination that counsel could not have independently known of Mr. Smoot is reasonable and well-supported in the record." Federal Opinion 12.

Cousins thereafter timely noticed this appeal, and, on May 5, 2009, we awarded the COA on the Ineffective Assistance Claim. We also appointed counsel to represent Cousins, and we possess jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

## II.

We review de novo a district court's denial of 28 U.S.C. § 2254 habeas corpus relief on the basis of a state court record. See Bell v. Ozmint, 332 F.3d 229, 233 (4th Cir. 2003). Pursuant to § 2254, however, "the scope of our review is highly constrained." Jackson v. Johnson, 523 F.3d 273, 276 (4th Cir. 2008). A state court's factual determinations are presumed to be correct, and a § 2254 applicant bears the burden of rebutting this statutory presumption by "clear and convincing evidence."

---

ineffective for failing to seek the exclusion of evidence of his prior convictions.

9

§ 2254(e)(1); see Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).  Section 2254 relief may only be awarded if the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d).

## III.

The theory underlying the Ineffective Assistance Claim is simple:  Under the circumstances, Cousins's lawyer should have conducted thorough interviews with persons who lived near the scene of Moeller's murder, and, had the lawyer done so, the investigation would have revealed, through Ruth Wingate, that William Smoot was present at the murder scene when the fatal shots were fired.  Moreover, having identified Smoot and secured his trial testimony, the defense theory that it was Ebony Coleman who had murdered Moeller would have been bolstered to the point that Cousins would not have been convicted.

### A.

As the state habeas court correctly recognized, the Ineffective Assistance Claim is governed by the Supreme Court's seminal decision in Strickland v. Washington, 466 U.S. 668

10

(1984).  The Strickland decision explained that a state prisoner alleging constitutionally ineffective assistance must show (1) deficient performance, i.e., "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, plus (2) resulting prejudice, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. These two requirements — deficient performance plus prejudice — are commonly referred to as Strickland's "performance" and "prejudice" prongs.

Although an ineffective assistance claim must satisfy both of the Strickland prongs, the Supreme Court has recommended that, when possible, the prejudice prong should be first addressed.  Indeed, Strickland itself explained that there is no need "to address both components of the inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697.  As Justice O'Connor recognized,

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Id.  Here, the state habeas court disposed of the Ineffective Assistance Claim in the procedural manner recommended by the

11

Strickland decision, first addressing the prejudice prong and concluding that Cousins was unable to show prejudice. The state habeas court then declined to assess the performance prong at all. Accordingly, we begin our review of the Claim by assessing Cousins's contention on the prejudice prong of Strickland.

B.

In order to properly analyze the prejudice prong of an ineffective assistance claim (without first assessing the performance prong), a court must assume that the lawyer performed deficiently. Next, the court must simply determine whether the lawyer's assumed deficiency had the potential of influencing the outcome of the proceedings. Often, a habeas petitioner alleges that his lawyer's deficiency involved a failure to introduce a critical piece of evidence, or a failure to adduce critical testimony. In such a circumstance, the prejudice analysis necessitates an assessment of the effect, if any, the unintroduced evidence might have had on the verdict, in light of the evidence actually presented. See, e.g., United States v. Roane, 378 F.3d 382, 409 n.15 (4th Cir. 2004) (examining credibility and weight of evidence to determine whether failure to call potential witness affected outcome of trial); Fisher v. Lee, 215 F.3d 438, 451 (4th Cir. 2000) (assessing likely effect of testimony from potential witnesses in light of other evidence).

12

Here, by contrast, the state habeas court never reached the issue of how Smoot's evidence would have been perceived by the jury, because the State Opinion concluded that his testimony would not have been available at trial even if Cousins's lawyer had conducted the comprehensive neighborhood investigation now being suggested. Accordingly, we need only examine the factual basis for that conclusion. And, if it is a well-founded conclusion, Cousins is not entitled to § 2254 relief and our review ends.

Of course, in conducting our assessment of the Ineffective Assistance Claim, we presume that the state habeas court's factual findings are correct, and we accord them great deference. Indeed, to prevail on his Claim, Cousins is obliged to "rebut[] the presumption of correctness by clear and convincing evidence," § 2254(e)(1), and then show that the state court's ruling "was based on an unreasonable determination of the facts in light of the evidence presented" during the state proceedings, § 2254(d)(2). See Winston v. Kelly, 592 F.3d 535, 555 (4th Cir. 2010) ("If a petitioner succeeds under § 2254(e)(1), he has merely proven that the state court finding was incorrect. To satisfy § 2254(d)(2), the petitioner must prove that the state court was not only incorrect, but objectively unreasonable.").

13

Unfortunately for Cousins, the state habeas court provided an unassailable factual basis for its ruling that Cousins had failed to show prejudice: that "there was no way for trial counsel to have discovered [Smoot] even after doing a reasonable investigation," and further, that "[t]here was no way that trial counsel could have independently known of Mr. Smoot because he never came forward to the police nor did he tell anyone else what he had witnessed." State Opinion 4. Consistent with those findings, Smoot testified in the state court's evidentiary hearing that, despite claiming to have been an eyewitness to the Moeller shooting, he had never provided his story to the authorities. In fact, until much later, Smoot did not advise anyone about the events that he had witnessed. Immediately after witnessing the Moeller murder, according to Smoot, he got into his vehicle and fled the scene.

As a result, the Ineffective Assistance Claim rests on a tenuous theory: that a thorough investigation in the neighborhood of the murder scene would have uncovered Wingate, who in turn would have identified her friend Smoot as an exculpatory witness. The viability of this theory hinges on whether the state court record supports the proposition that Wingate knew that Smoot was outside her door when Moeller was

14

shot, and that she would have advised Cousins's lawyer of that fact.

Importantly, Wingate has never testified in any of these proceedings — either in Cousins's trial or during the state habeas court's evidentiary hearing. Accordingly, there is nothing in the record from Wingate concerning her knowledge of Smoot's whereabouts at the time of the Moeller murder. Rather, we have only Smoot's testimony concerning his belief of what Wingate knew, or what she ought to have known. In the state court's evidentiary hearing, Smoot initially testified that it was his "understanding" that Wingate knew he was outside her door when Moeller was shot. J.A. 1017. On cross-examination, however, he confirmed that "when the shooting occurred Ms. Wingate didn't know that [he was] outside." Id. at 1019. Pressed further on the point, Smoot equivocated, asserting only that Wingate "should have known" he was outside her door because he was on his way to her house. Id. at 1021. Smoot eventually said that Wingate only "later" found out that he had been outside her door when Moeller was shot, and yet failed to ever specify when or how Wingate had acquired such knowledge. Id. As a result, Smoot's evidence is far from compelling and, absent

a more concrete showing of Wingate's knowledge, the state habeas court was presented with speculation only.[5]

In these circumstances, we are unable to disturb the state habeas court's factual finding that a reasonable investigation would not have revealed Smoot's purported eyewitness testimony. Thus, we are also unable to disagree with the legal conclusion to which that finding gives rise: even if Cousins's lawyer performed deficiently, his performance did not prejudice the outcome of the trial.[6] Accordingly, the Ineffective Assistance Claim was properly rejected by the district court, and we must affirm.

---

[5] Notably, Smoot testified that he eventually had a conversation with Wingate about the Moeller shooting, during which Smoot failed to inform Wingate that he had seen the shooting occur. See J.A. 1019. If this evidence is accurate, Wingate would have had no reason to suggest Smoot as an eyewitness to Moeller's shooting, even if she had been questioned by Cousins's lawyer.

[6] In concluding that Cousins failed to make a showing of prejudice sufficient to satisfy Strickland, the state habeas court also found — as an alternative basis for its rejection of the Ineffective Assistance Claim — that even if Smoot had been discovered prior to trial, he "would not have come to court" and "would not have testified truthfully." State Opinion 4. Because the state habeas court's finding that the lawyer could not have discovered Smoot was a sufficient basis for its prejudice ruling, we need not address the court's alternative basis for that determination.

16

IV.

Pursuant to the foregoing, we affirm the district court's denial of Cousins's petition for § 2254 habeas corpus relief.

<u>AFFIRMED</u>